CnoziEE, special J.
delivered the opinion of the court.
This bill of complaint is filed by Thomas McClain, William McClain, and John McClain, minor heirs of Thomas McClain, deceased, by their guardian, William Kincaid, against David Rogers and others, for the recovery of a negro slave, Sally, who had been bequeathed to the said minor heirs, by their father.
The pleadings and proof in this case, establish that on the 9th of December, 1844, the respondent, David Rogers, hired the negro girl, Sally, from Willis D. Alder, (who was administrator of the estate of Thomas McClain, deceased, with the will annexed) for one year; and that he gave a bond with security in the penalty of six hundred dollars, to return the negro girl to the administrator, at the end of the time for which he had hired her. In March following, three judgments, amounting in the aggregate to about sixty dollars, were obtained against the administrator of McClain, before a justice of the peace, of Claiborne county. Two of these judg *84 ments were respectively in favor of David Rogers and William Rogers, two of the respondents to the bill. One of the three judgments, was in the name of a man by the name of Vanbibber; but the claim upon which his judgment was predicated, had been traded by him, to John Hunter, who acted as the constable in all three of the cases, and who is also made a respondent to the bill. Executions upon the two judgments, against the administrator, in favor of David Rogers and William Rogers, were stayed. The justice of the peace, however, one month from the time of the rendition of the judgment, although the time of. stay had not expired, by six or seven months, at the request of Jesse Rogers, who acted as the agent for David and William Rogers, issued executions upon their judgments, on the ground that the stayor of the executions resided in a different county from the one the plaintiffs lived in; and Hunter having taken out an execution on the judgment in the name of Vanbibber, all three of the executions were levied by Hunter, on the negro girl, Sally, in the possession of David Rogers. The girl, in ten days afterwards, was sold at public sale, by the constable, and bid off by respondent David Rogers, for the sum of one hundred dollars. The proof shows that she was worth from three hundred and fifty to five hundred dollars.
The bill of complainants charge, that David Rogers, William Rogers and John Hunter, combined for the purpose of defrauding them out of the negro girl Sally; that the guardian of the complainants, although he lived within six miles of where the negro girl was sold, had no notice or knowledge of the sale; that the complainants, who lived within one mile of the house of David Rogers, the place of sale, had no previous notice or *85 knowledge of the levy of the executions or sale; and that the administrator had no previous notice or knowledge of these facts; that due notice was not given by the constable, blunter, of the sale; and that there were very few persons that attended it, or knew any thing about it. It also charges that the administrator, who is made a respondent to the bill, neglected and mismanaged the estate; and that he failed, or refused to bring suit against the other respondents, for the negro girl. The administrator admits that he had no notice or knowledge of the sale, and charges that it was a fraud; but denies the allegation of the bill, charging him with mismanaging the estate; and avers that he had taken preparatory steps to bring suit for the girl, but the guardian, Kincaid, thought it best for him to sue.
The chancellor pronounced a decree in favor of the complainants, that the respondent David Rogers, should deliver the negro girl to the guardian, Kincaid, and that an account should be stated of the hire of the gild while in his possession, &c.
The proof in this cause does not make out a case of combination, on the part of the three respondents, David Rogers, William Rogers and John Hunter, to effect a sale of the negro gild, on account of any property in her, which William Rogers and John Hunter expected to acquire, by the purchase of David Rogers. But it does establish the fact, that these two respondents, had a strong disposition to favor the interests of their corespondent, and oppose that of the administrator. The manner in which the witness’ certificates were procured to be issued, upon which the judgments were predicated, from a cause in which Alder was defendant, both as administrator and individually, and in which he was *86 the successful party, the certificates having been issued against him, as administrator alone, and being taken out one month after the cause was determined before he had time to make his costs out of the opposite party, and the subsequent proceedings thereon, are all circumstances, to prove this disposition on their part, and their anxiety to seize upon the negro slave, in the possession .of the respondent David Rogers. If the notices of the sale of the negro girl were posted up at the usual and proper places in the neighborhood, by the constable, Hunter, which may well be questioned, it is evident, from the few persons who attended, and all the circumstances connected with the sale, that the respondents David Rogers, William Rogers and John Hunter, together with Jesse Rogers, who acted as agent of the two first named respondents, endeavored, as much as' possible, to conceal the fact of the levy of the "executions upon the negro girl, and the sale, from those who were interested in her, as property of the estate; for none of them knew of these facts. The administrator, Alder, although one witness states that the justice of the peace told him he must get another individual to stay the executions, instead of Joel Meadows, who lived in another* county, yet as Meadows had been accepted as stayor by the justice, and signed his name to the judgment as such, had no sufficient reason to apprehend that the executions would be taken out, and levied on the negro girl, six or seven months before the stay expired. And the complainants and their guardian, who were equally interested with the administrator in the preservation of the negro girl, as property of the estate, although they lived in the immediate neighborhood where the sale ■took place, had no knowledge of it, or any of the cir *87 cumstances that preceded it. As the respondent, David Rogers, had hired the negro girl from Alder, the guardian, and had given his bond to return her to him at the end of the year, it was very natural and reasonable, that the levy of the executions, upon the girl in his possession, should have prompted him to have given this information to Alder, if he did not know that he was apprised of the fact; or to the complainants, or their guardian, more especially, as the executions had been taken out and levied on the negro girl, six or seven months before the stay had expired. It is true, that David Rogers, in his answer, denies any active participation in the proceedings, in obtaining the judgments in his favor, and issuing the executions, previous to the expiration of the stay; but we cannot suppose that he was ignorant of the acts of his agent, Jesse Rogers, who was also his son, in all that related to the judgment, which was obtained in his name, and which he received the benefit of, at his purchase of the negro girl, by a credit of so much of the hundred dollars purchase money, as the execution, in favor of himself, amounted to. Whether he had a hope, or expectation, of deriving the benefit he did, from the sale of the negro girl, and this prevented him from giving those interested in her, notice of the levy of the executions on the girl in his possession, we cannot say; but under all the circumstances of this case, we think he should have apprised the administrator, or some one interested in the property, of this fact; we think, therefore, that under the facts of this case, the chancellor was correct in setting aside the sale; upon the ground that it was accomplished by a series of acts, on the part of the other respondents, whieh amounted to a circumvention of the administrator, *88 and that, by great secrecy and artifice, they brought about the sale of the negro girl, without his knowledge, or those interested in her as property of the estate, at a sacrificing price, from which they ought not to reap any advantage. But it is contended, on behalf the respondents in this case, that the complainants had no right to file this bill; that the administrator was the proper person to bring suit for the negro girl, and if he had any remedy, it was at law; and that the bill is inconsistent with the rights of the administrator, and the due administration of the assets oí the estate.
The negro slave, Sally, was bequeathed to the complainants, by their father, in his last will and testament. They, therefore, had a direct interest in the slave as their property. And although she was a part of the assets of the estate, in the hands of the administrator, and could not be taken possession of by them, or their guardian, without his consent; yet, if by his neglect to sue, she was likely to be lost to the estate, and they were not permitted to protect their interest, and assert their right to their property, through the legally established tribunals of the country, they would be denied any remedy whatever. For this court has determined, (see the case of Williams vs. Otey et als, 8 Hump. 563, in the last paragraph of the opinion of the court,) that “whenever a trustee, having the legal title, neglects to sue, till he is barred by the statute of limitations, the cestui qui trust is likewise barred, though an infant under twenty-one years of age. In the case of Wich vs. the East India Company, P. Will 309, the Lord Chancellor held “that if an executor, administrator or trustee for infant, neglects to sue within six years, the statute of limitation shall bar the infant. In the case of Lewellen vs. *89 Macworth, 2 Equity cases, Ab. 579, Lord Hardwicke said, that “the rule that the statute of limitations does not bar a trust estate, holds only between cestui que trust and trustee, not between cestui que trust and trustee on one side and strangers on the other, for that would make the statute of no force at all, because there is hardly any estate of consequence without such trust, and so the act would never take place. Therefore, when a cestui que trust and his trustee, are both out of possession for the time limited, the party in possession has a good bar against them both.” According then to this principle, recognized by this court, if the administrator in this case had failed or refused to sue for the negro girl, the complainants, although they were minors, might have been forever barred, from asserting their right to the slave, by the statute of limitations. They might, it is true, at any time bring suit against the administrator, for any laches on his part in the management of the estate, whereby they were injured. In that event, they could only recover damages for the value of the property which had been lost to them by his .neglect; but in cases involving the right of property in slaves, this court has frequently determined, that a. court of chancery will take jurisdiction and determine principles in reference to this species of property, which it will not in regard to any other; because it is frequently important that the slave should be recovered by the owners, as no reasonable ascertained value in money would be adequate compensation for its loss. But it is argued that the administrator did not refuse or neglect to sue for the negro gii’l; and therefore, complainants had no right to file their bill. The bill so charges; the answer of the administrator, however, denies *90 the fact; and states that he was preparing to sue, when the complainant told him, he thought it was more proper he should bring the suit. There is no proof in the record to show when this conversation took place; but it does show conclusively, that the sale of the negro girl took place on the 11th of April, 1845, and this bill was filed on the 22d of January, 1847, nearly two years afterwards. We think, therefore, that the complainants were well justified in concluding, that their rights were about to be neglected by the administrator, after so long a delay, in a case that should have been attended to with the utmost promptitude. The respondent, David Rogers, had held the negro girl, as his own, for more than a year after the time he was to return her, according to his contract for her hire; and for nearly two years after the time of his purchase. If the administrator had intended to sue, he should have done so, at least immediately after the time, for which she had been hired, had expired, on the respondent, David Rogers, failing to return her. Besides, the father of complainants, according to the proof in the record, had died in 1842, and though the day and month is not stated, between that time and the filing of this bill in January, 1847, a period of more than four years must have intervened. And on this ground, complainants had a right to exhibit their bill against the administrator, and any others, who may have been concerned in detaining or illegally wresting their estate from them; for a court of equity will entertain a bill on behalf of legatees or distributees, for their portion of an estate, after two years from the date of letters, testamentary or of administration. And we also think that, under all the circumstances of this *91 case, the complainants, by their guardian, were the most proper persons to sue.
But it is further argued that the widow of the testator, although her name is inserted in the bill as a respondent, is no farther treated as such in the subsequent proceedings of the cause, there being no answer; and no judgment pro confesso against her; and that this is an error for which the decree should be reversed. The bequest of the slave, Sally, to complainants, as before stated, is a specific legacy; and, although it appears incidentally in the record, that the widow dissented from the will, yet as all the balance of the estate would have to be exhausted, to give her her dower at common law, before she would have any interest in the specific legacies, and as there is no proof in the record to justify us in coming to the conclusion that such will be the case, we think her interest in the specific legacy involved, is too remote to make it necessary that she should be made a party before any decree could be pronounced. She, however, had legal notice of the existence of the suit, (her name appearing in the bill as respondent,) and if she had any interest or rights in the subject matter, she had an opportunity of asserting and contesting them, but she did not choose to do so. The decree of the chancery court will be affirmed.